FILED
SEP - 5 2006
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLYSON ROACH; JASON ROACH; JOHN ROACH AND LORI ROACH, <br><br>　　　　　　Plaintiffs, <br><br>　　v. <br><br>HCAL CORPORATION; HARRAH'S ENTERTAINMENT, INC.; HARRAH'S OPERATING COMPANY, INC; and Does 1 to 20, inclusive, <br><br>　　　　　　Defendants. | CASE NO: 06-CV-953 W (WMC) <br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

　　On June 3, 2004 Plaintiffs Allyson Roach, Jason Roach, John Roach and Lori Roach ("Plaintiffs") filed a tort action against Defendants HCAL Corporation, Harrah's Entertainment and Harrah's Operating Company ("Defendants") in San Diego Superior Court alleging negligence, negligent infliction of emotional distress and wrongful death.

That same day, Plaintiffs commenced a separate administrative action against the Rincon San Luiseno Band of Mission Indians ("Tribe") and Defendants in tribal court.

On July 8, 2004 Defendant removed the state court action to this Court. On September 20, 2004 the Court granted Defendants' motion to dismiss and held that Plaintiffs must exhaust their tribal claims before proceeding in federal court. On June 13, 2005, after receiving a draft tribal decision denying their claims, Plaintiffs commenced another federal action against Defendants. Defendants again moved to dismiss on the basis that Plaintiffs had failed to exhaust their tribal remedies, reasoning that because the tribal decision was not final Plaintiffs' federal action was still premature. On December 13, 2005 the Court agreed and dismissed Plaintiffs' action for the second time.

On May 2, 2006, having finally exhausted their tribal remedies, Plaintiffs commenced their third tort action against Defendants. Defendants again move to dismiss, arguing that this Court lacks subject matter jurisdiction to hear this dispute. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1).

## I.  BACKGROUND

Harrah's Rincon Casino and Resort ("Casino") is located on the Rincon San Luiseno Band of Mission Indians Reservation ("Rincon reservation"). The Tribe is a federally recognized sovereign. The Tribe owns and operates the Casino pursuant to the Indian Gaming Regulatory Act and the Tribal State Gaming Compact. According to the Complaint, Defendants planned, financed constructed, staffed, managed, promoted and operated the Casino.

Plaintiffs reside several miles from the Casino. On October 26, 2003 a large fire began within the Rincon reservation, one half mile from the Casino. The fire spread and eventually burned Plaintiffs' residence, injuring Jason Roach, seriously injuring and disfiguring Allyson Roach and killing Ashleigh Roach.

On June 3, 2004 Plaintiffs simultaneously commenced a lawsuit in state court and an administrative proceeding before the Tribe. Both actions named Defendants and sought tort damages. On December 21, 2004, after a substantial delay, the tribal court issued an order accepting jurisdiction over Plaintiffs' claim. The tribal court's order provided that Defendants file either an answer or a motion to dismiss by no later than January 15, 2005. The tribal court order also provided that Plaintiffs file any argument they may have that the Tribe waived its sovereign immunity by January 15, 2005.

On January 14, 2005 Defendants filed their motion to dismiss in tribal court. The next day, Plaintiffs filed papers explaining why they believed the Tribe had waived its sovereign immunity and objecting to, among other things, the Tribe's jurisdictional findings in its December 21, 2004 order. Although the tribal court's December 21, 2004 order afforded Plaintiffs the opportunity to respond to Defendants' motion to dismiss, it is unclear on the record before the Court whether they did so.[1] On January 28, 2005 Defendants filed a response to Plaintiffs' objections to the tribal court's December 21, 2004 order. Defendants argued that the Tribe's assertion of jurisdiction was appropriate and that the Tribe had not waived its sovereign immunity.

On July 15, 2005 the tribal court issued a draft opinion ruling on Plaintiffs' claims. The draft opinion concluded that the Tribe had jurisdiction over Plaintiffs' claims, the Tribe had not waived its sovereign immunity and that Plaintiffs' claims against Defendants failed because Defendants, as a matter of law, owed Plaintiffs no legal duty. A scheduling order attached to the front of the draft opinion set the matter for hearing on August 18, 2005. At the hearing, the tribal court would permit each side twenty minutes to present arguments regarding the issues raised in the pleadings and

---

[1] The tribal court's final order ruling on Plaintiffs' claims and Plaintiffs' counsel's declaration both indicate that Plaintiffs did file an opposition to Defendants' motion to dismiss. However, neither Plaintiffs' nor Defendants' submissions in this action contain a copy of Plaintiffs' opposition.

in the draft opinion.

After scheduling problems, Plaintiffs elected to waive oral argument and submit on the papers. On November 7, 2005 the tribal court issued its final order denying Plaintiffs' claims. This lawsuit and Defendants' motion to dismiss followed.

## II. LEGAL STANDARD

It is well-established that a federal court cannot reach the merits of any dispute until it confirms that it has subject matter jurisdiction to adjudicate the issues presented. See Steel Co. v. Citizens for a Better Environ., 523 U.S. 83, 95 (1998). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Id. (quoting Ex parte McCardle, 74 U.S. (7th Cir. Wall.) 506, 514, 19 L.Ed. 264 (1868)). The plaintiff bears the burden of establishing subject matter jurisdiction. See Ashoff v. City of Ukiah, 130 F.3d 409, 410 (9th Cir. 1997).

## III. DISCUSSION

Defendants first contend this Court lacks subject matter jurisdiction to hear this action because the Tribe's exercise of jurisdiction was proper and when an Indian tribe properly exercises jurisdiction over a dispute, federal courts may not review issues already litigated in tribal court. Specifically, Defendants argue that Plaintiffs effectively consented to the Tribe's jurisdiction by commencing a tribal action or alternatively that the subject matter of this dispute, fire protection services on a reservation, is so related to the Tribe's sovereign powers that it falls within the Tribe's jurisdiction.

Plaintiffs counter that the Tribe's exercise of jurisdiction was not proper because this is a dispute between two non-tribe members, regarding injuries that occurred outside of the reservation. Plaintiffs also argue that even if the Tribe's assertion of jurisdiction was proper the Court may reach their claims' merits because they were not afforded a meaningful opportunity to litigate their claim against Defendants before the

tribal court.

This case presents complex questions regarding the interplay between federal district court jurisdiction and tribal jurisdiction and sovereignty. Unfortunately, the precedent in this area does not set forth clear rules or standards for this Court to follow. Instead, the murky path that this Court must tread is defined by a "complex patchwork of federal, state, and tribal law, which is better explained by history than by logic." United States v. Bruce, 394 F.3d 1215, 1218 (9th Cir. 2005) (internal quotations omitted). With that in mind, the Court turns to examine the relevant law in this area.

### A.  TRIBAL COURT'S JURISDICTION

A federal court's analysis of a tribal court's jurisdiction begins with Montana v. United States, 450 U.S. 544 (1981). Under Montana, tribes have two bases for jurisdiction: 1) their inherent power "necessary to protect tribal self-government [and] to control internal relations" and 2) any additional authority that Congress may delegate. Montana, 450 U.S. at 564. Neither party contends that the Tribe had jurisdiction over Plaintiffs' claims pursuant to a Congressional grant of authority.

Under their inherent powers, Indian tribes have relatively broad authority to regulate the activities of their members, including defining the terms of enrollment, determining the continuing status of their members and managing relations among them. Strate v. A-1 Contractors, 520 U.S. 438, 459 (1997). Likewise, "[t]he tribes retain legislative and adjudicative jurisdiction to provide for disposition of reserved lands and to regulate activities on those lands." Smith v. Salish Kootenai College, 434 F.3d 1127, 1131 (9th Cir.) (en banc), cert denied 126 S. Ct. 2893 (Jun. 19, 2006). The tribes' "considerable control" of their lands extends to "nonmember conduct on tribal land." Strate, 520 U.S. at 454.

However, "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe" when those activities occur on non-Indian land within the reservation, subject to two exceptions. Montana, 450 U.S. at 565. First,

"[a] tribe may regulate, "through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Montana, 450 U.S. At 565. Second, a tribe retains civil authority over nonmembers insofar as the nonmember's conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 566. Importantly, Montana's general rule, and both of its exceptions, apply to nonmember conduct that occurs on "alienated, non-Indian reservation land." Strate, 520 U.S. at 454, 456. Under Montana, the tribes still retain considerable control of nonmember conduct on tribal land. Id. at 454; see e.g. McDonald v. Means, 309 F.3d 530 (9th Cir. 2002) (tribal court had jurisdiction over a claim that arose out of an accident on tribal roads).

The Ninth Circuit's most recent ruling addressing these jurisdictional decisions sheds some light on their application. In Smith v. Salish Kootenai College, 434 F.3d 1127 (9th Cir. 2006), an en banc panel exhaustively reviewed Supreme Court and Ninth Circuit precedent before concluding that the tribal court had properly exercised jurisdiction over Smith's tort claims. Smith's claim arose from an accident that occurred on a federal highway within the reservation, while he was driving a truck owned by the college. Id. at 1135. Neither Smith nor the college were tribe members, but after some discussion not relevant here, the Ninth Circuit concluded that the college should be treated as a tribe member for the jurisdictional analysis. Id. at 1132-35. Although the accident occurred on non-tribal land, the Ninth Circuit ruled that because Smith's claims implicated the college's actions on the college campus, which was on tribal land, the claims should be treated as arising from activities conducted on tribal land. Id. at 1135. Finally, the Ninth Circuit decided that Smith's claims did not fit neatly into one of Montana's exceptions. Id. at 1136. Nevertheless, the Smith court emphasized that Smith had voluntarily chosen to appear in tribal court and held that by doing so his claims fit within Montana's "consensual relationship" exception. See

Smith, 434 F.3d at 1140 ("We hold that a nonmember who knowingly enters tribal courts for the purpose of filing suit against a tribal member has, by the act of filing his claims, entered into a 'consensual relationship' with the tribe within the meaning of Montana.").[2]

### B. THE TRIBAL COURT PROPERLY EXERCISED JURISDICTION OVER PLAINTIFFS' CLAIMS

Taking all of the facts of this case into account, it is clear that the tribal court properly exercised jurisdiction over Plaintiffs' claims against Defendants. Plaintiffs and Defendants are not tribe members and neither party has contended that they are. However, Plaintiffs' claims do arise from activities and/or conduct that occurred within the reservation's borders, although it is unclear whether the conduct occurred on Indian or non-Indian land. Plaintiffs filed this action seeking damages for injuries that resulted from a fire that started inside the Rincon reservation. (*Complaint* at ¶ 31.) Plaintiffs' tort claims against Defendants are all founded on Defendants' alleged failure to provide proper fire protection services *within* the reservation, not outside of it. (*Id.* at ¶¶ 1-4, 47-48, 51, 53.) While Plaintiffs may have sustained their injuries outside of the reservation, the alleged negligence that proximately caused those injuries occurred within the reservation and their claims are therefore properly analyzed as arising from

---

[2]Interestingly, the Ninth Circuit in Smith elected to apply Montana despite the Smith court's conclusion that Smith's claims arose from activities that occurred on tribal land. This Court's reading of Strate and Montana leads it to conclude that Montana applies only to non-member conduct on lands that are within the reservation but alienated to non-Indians. See Strate, 520 U.S. at 454, n. 8 (comparing the Montana Court's "unqualified recognition" that a tribe may prohibit nonmembers from hunting or fishing on land belonging to the tribe with the question actually addressed by the Montana Court: what powers the tribe had to regulate non-member hunting and fishing on reservation land alienated to nonmembers); see also Means, 309 F.3d at 537-40 (holding that Montana and Strate apply only to "non-Indian fee land" and that because the accident at issue occurred on Indian land the tribe had properly exercised jurisdiction). Since the Court concludes below that the tribe properly exercised jurisdiction under Montana, the Court need not resolve this apparent inconsistency or decide whether the fire at issue here started on tribal land or land within the reservation owned in fee simple by a non-Indian.

Defendants' activities inside the reservation. Smith, 434 F.3d at 1135.

Likewise, Plaintiffs elected to proceed against both Defendants and the Tribe in tribal court. Of course, at the same time Plaintiffs filed against Defendants in state court, something Plaintiffs suggest means they did not consent to tribal court jurisdiction over their claims against Defendants under Smith. This contention is without merit and obviously begs the question of why Plaintiffs joined Defendants to their tribal claim if they did not intend to consent to tribal court jurisdiction. At the time Plaintiffs first filed their claims, no court ruling required them to file their claims against Defendants in tribal court instead of state or federal court. Plaintiffs are not entitled to simultaneously pursue two parallel actions to their conclusion and then pick the result they like. Nor are they entitled to actively pursue a tribal action while holding their federal claim in abeyance in case their tribal claim ends poorly. Simply put, Plaintiffs voluntarily chose to pursue Defendants, who consented to tribal court jurisdiction, and the Tribe in tribal court before any court ruling required them to do so and cannot now be heard to complain regarding that decision's consequences. Smith, 434 F.3d at 1141. Under Smith, the consequence of Plaintiffs' tactical decision is a consent to tribal jurisdiction over their claims against Defendants under Montana's first exception. See Smith, 434 F.3d at 1140.

Had Plaintiffs pursued only the Tribe in tribal court, they would have a better argument that they did not consent to tribal jurisdiction over their claims against Defendants. However, even if that were the case, Plaintiffs' claims against Defendants are so inextricably intertwined with Plaintiffs' claims against the Tribe that it appears tribal jurisdiction in that situation would still be appropriate. See e.g. (*Complaint* at ¶¶ 2, 3, 4, 19, 48). Nevertheless, Plaintiffs elected to *join* Defendants in their tribal lawsuit, which makes this Court's ruling that it lacks jurisdiction inescapable under Smith.

Finally, it bears repeating that this case is about a fire that started *within the Rincon reservation's borders*. The essence of Plaintiffs' claims is that had Defendants provided proper fire protection services for the reservation the fire never would have spread to Plaintiffs' property and Plaintiffs would not have suffered any injuries. See e.g. (*Complaint* at ¶¶ 1-4.) Such a claim necessarily concerns an activity that "directly affects the tribe's political integrity, economic security, health, or welfare." Strate, 520 U.S. at 446. Montana's second exception is certainly not as broad as the above-quoted statement implies. Strate, 520 U.S. at 458. If it were "the exception would severely shrink the rule." Id. Instead, Montana's second exception applies to situations where "a State's (or Territory's) exercise of authority would trench unduly on tribal self-government." Id.

Surely that is the case here. Were this Court to exercise jurisdiction over Plaintiffs' claims it would ultimately be called upon to decide whether Defendants were obligated to provide fire protection services to the Rincon reservation. Fire protection is one of the most basic functions of any sovereign. See New Jersey v. New York, 523 U.S. 767, 831 (1998); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 173 n. 10 (1978) (noting that a sovereign's typical functions include "education, fire and police protection, and tax collection."). It is not for this Court to dictate how the Tribe decides to provide fire protection services to its members.

Plaintiffs are of course correct that any decision the Court made in this case would not directly regulate the Tribe's affairs. However, a finding of liability and an award of money damages against Defendants would certainly indirectly impact the Tribe's decisions regarding responsibility for fire protection services on the reservation. For instance, the specter of tort damages would encourage Defendants to provide fire protection services to the reservation, whether the Tribe wants them to or not. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 247 (1959) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing

conduct and controlling policy."). By regulating Defendants' conduct this Court would be reaching conclusions regarding the responsibility for fire protection services on the Rincon reservation and thereby indirectly interfering with tribal self-government. Thus, the Court concludes that its exercise of jurisdiction over this case would "trench unduly on tribal self-government." Strate, 520 U.S. at 548.

Accordingly, the Court holds that the Tribe properly exercised jurisdiction over Plaintiffs' claims against Defendants. The facts as alleged in Plaintiffs' Complaint demonstrate that this case meets both of Montana's exceptions. First, Plaintiffs' effectively consented to tribal court jurisdiction under the Ninth Circuit's recent decision in Smith by joining Defendants to Plaintiffs' tribal claim. Second, this Court's exercise of jurisdiction would impose significantly on functions the Supreme Court has held are to be left to the Tribe's own self-government. Since the Tribe properly exercised jurisdiction over Plaintiffs' claims, the Court may only consider their merits if they were not fully litigated in tribal court.

### C.   PLAINTIFFS' CLAIMS AGAINST DEFENDANTS WERE FULLY LITIGATED IN TRIBAL COURT

Plaintiffs concede that this Court is barred from considering their claims' merits if the tribal court properly exercised jurisdiction and their claims were fully litigated in tribal court. (Pl.'s Opp'n at 16); Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 19 (1987) ("Unless a federal court determines that the Tribal Court lacked jurisdiction, however, proper deference to the tribal court system precludes relitigation of issues raised . . . and resolved in the Tribal Courts."). Nevertheless, Plaintiffs contend that their claims against Defendants were not fully litigated in tribal court because they were not afforded the opportunity to take discovery or present evidence. The Court disagrees.

Having reviewed the tribal court proceedings, it is plain that Plaintiffs were provided with a similar opportunity to litigate their case as they would have had in state or federal court. Plaintiffs' contention that the tribal court ruled on their claims' merits without providing them an opportunity to conduct discovery misrepresents the tribal

court proceedings.[3] Defendants filed a motion to dismiss Plaintiffs' claims on the basis that Defendants had no legal duty as a matter of law in connection with the start, spread, prevention or control of the wildfire that causes Plaintiffs' injuries. (*Def.'s Lodgement*, Ex. K.) Defendants' motion relied extensively on California and federal law. (*Id.*) After "[a]ccepting the Roach family's factual allegations as true, and affording them the benefit of all reasonable inferences," the tribal court concluded "as a matter of law that [Defendants] owed no duty to the Roach family[.]" (*Def.'s Lodgement*, Ex. S at 8, 10.) As the tribal court properly noted, and as Plaintiffs concede, determining whether a party has a legal duty is primarily a legal question. (*Def.'s Lodgement*, Ex. S at 7); (*Pl.'s Opp'n* at 22.) A federal or state court reviewing Defendants' motion to dismiss Plaintiffs' tribal claim would have applied a very similar, if not identical, standard to that applied by the tribal court.[4]

Moreover, Plaintiffs' complaints that the tribal court did not allow them to contest its ruling, or move for reconsideration or appeal, ring hollow. Much like many state and federal courts, the tribal court issued a draft, or tentative, order ruling on Defendants motion to dismiss and scheduled oral argument. (*Def.'s Lodgement*, Ex. N.) Although it may be rare, spirited oral argument does sometimes move a court off of its tentative ruling. However, after encountering scheduling difficulties, Plaintiffs elected

---

[3]Had they been allowed to take discovery, Plaintiffs claim they would have obtained the management agreement between Defendants and the Tribe. Presumably Plaintiffs believe that they would have been able to use this document to prove in tribal court that Defendants agreed to provide fire protection services on the Rincon reservation. The Court finds this curious considering Plaintiffs' concession that Defendants did *not* have a contractual obligation to provide fire protection services to the reservation. See (*Def.'s Lodgement*, Ex. S at 8) ("It is undisputed that [Defendants] did not assume a contractual obligation to provide fire protection services to the Rincon reservation.")

[4]Indeed, the tribal court gave Plaintiffs' even more leeway than a federal court would have in ruling on Defendants' motion to dismiss. Not only did the tribal court consider whether Plaintiffs' claims against Defendants as alleged sufficiently pled Defendants' duty, they also considered documents Plaintiffs submitted outside of the pleadings and accepted them as true. (*Def.'s Lodgement*, Ex. S at 8.)

to waive oral argument and submit on their papers, despite the fact that the tribal court's tentative ruling was not in their favor. Plaintiffs cannot complain that the Tribe did not give them an opportunity to contest the tribal court's ruling when they declined oral argument and elected to submit on their papers.

Accordingly, the Court concludes that Plaintiffs' claims were fully litigated in tribal court. The tribal court decided as a matter of law that the facts alleged in Plaintiffs' claim, and supporting documents, did not establish that Defendants' owed them a legal duty. Since that conclusion was fatal to all of Plaintiffs' claims against Defendants, the tribal court granted Defendants' motion to dismiss. The process would have been similar, if not identical, in federal or state court. As Plaintiffs fully litigated their claims against Defendants in tribal court, this Court may not consider the claims' merits. Defendants' motion to dismiss is **GRANTED**.

### IV. Conclusion and Order

In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss for lack of subject matter jurisdiction. (*Doc. No. 6-1*). Lacking subject matter jurisdiction, the Court may not reach the parties' remaining contentions.[5] The clerk of the court shall close the district court case file.

IT IS SO ORDERED.

DATE: August 30, 2006

HON. THOMAS J. WHELAN
United States District Court
Southern District of California

---

[5] To the extent that Plaintiffs might seek leave to amend, the Court must decline insofar as this Court completely lacks subject matter jurisdiction – such that any purported leave to amend would be a mere advisory opinion. See e.g., Segal v. Am. Telephone & Telegraph Co., 606 F.2d 842, 844 (9th Cir. 1979); Fed.R.Civ.P. 41(b); see generally 18 C.Wright, A Miller and E. Cooper, Federal Practice and Procedure § 4436 (1981).